## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIAM KOZMA, derivatively on behalf of NOVABAY PHARMACEUTICALS, INC. and individually and on behalf of all other similarly situated stockholders of NOVABAY PHARMACEUTICALS, INC., | |
| Plaintiff, | |
| v. | C.A. No. |
| MARK M. SIECZKAREK, PAUL E. FREIMAN, GAIL MADERIS, XINZHOU LI, XIAOYAN LIU, MIJIA WU, TODD ZAVODNICK, T. ALEX MCPHERSON, MASSIMO RADAELLI, THOMAS J. PAULSON, and JUSTIN M. HALL, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| and | |
| NOVABAY PHARMACEUTICALS, INC., | |
| Nominal Defendant. | |

## VERIFIED STOCKHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT

Plaintiff Liam Kozma ("Plaintiff"), by and through his undersigned counsel, asserts this action derivatively on behalf of NovaBay Pharmaceuticals, Inc. ("NovaBay" or the "Company") and on behalf of himself and other similarly situated stockholders of against former and current members of NovaBay's Board of Directors (the "Board") for breach of fiduciary duties and unjust enrichment. Plaintiff alleges, upon information and belief based upon, *inter alia*, the investigation made by his attorneys, except as to those allegations that pertain to the Plaintiff himself, which are alleged upon knowledge, as follows:

1.      Plaintiff asserts this action for breach of fiduciary duties and unjust enrichment to remedy false and misleading disclosures made by the Board to NovaBay's stockholders in proxy statements issued in connection with the Company's 2016 annual meeting of stockholders ("2016 Annual Meeting") and reconvened 2016 annual meeting of stockholders (the "Reconvened Meeting"), and to recover on the Company's behalf equity awards granted as a result of a tainted stockholder vote, including certain stock awards granted to the Company's chief executive officer and president, Mark Sieczkarek ("Sieczkarek").

2.      On April 18, 2016, the Company filed a Schedule 14A proxy statement (the "2016 Proxy") with the U.S. Securities and Exchange Commission (the "SEC") and on May 17, 2016, filed a Supplement to the 2016 Proxy (the "Proxy Supplement"). In the Company's 2016 Proxy and Proxy Supplement, the Board asked NovaBay stockholders to approve an amendment to NovaBay's 2007 Omnibus Incentive Plan (the "Plan") to increase the aggregate number of shares of NovaBay common stock reserved for issuance under the Plan by a purported total of 1,124,836 shares, such that the new total number of shares reserved for issuance under the Plan would be 3,124,836 shares (the "Plan Amendment"). In the proxy statements, the Board recommended that stockholders approve the amendment.

3.      The 2016 Proxy and Proxy Supplement affirmatively represented that, at the time of the stockholder vote, the Plan's aggregate share limit was two million shares and that raising the limit to 3,124,836 shares would only increase the limit by 1,124,836 shares.

4.      However, in truth, the Plan's aggregate share limit was only 582,876 shares, meaning that the Plan Amendment actually increased the aggregate number of shares of NovaBay common stock reserved for issuance under the Plan by 2,541,960 shares, or 1,417,124 shares more than what the Board represented to the stockholders.

5.     The difference between the misrepresented aggregate share limit increase of 1,124,836 shares and the actual increase of 2,541,960 shares represents a massive percentage of NovaBay's outstanding stock, and the stockholders would incur significant dilution if the Board were to issue the additional shares. As disclosed in the 2016 Proxy and Proxy Supplement, the Company had 5,074,806 outstanding shares as of April 7, 2016, the record date for the 2016 Annual Meeting and Reconvened Meeting, which means that the 1,417,124-share difference represented approximately 27.9% of the Company's outstanding common stock.

6.     The Board's misrepresentation of the Plan's aggregate share limit and the true effects of the Plan Amendment came at a time when the stockholders had already voiced concerns about increasing the Plan's aggregate share limit. In the 2016 Proxy, the Board had initially sought stockholder approval of an amendment to increase the aggregate share limit by a purported 2,500,000 shares. However, the Board was forced to reduce this number to the purported 1,124,836 shares because, as disclosed by the Company in the Proxy Supplement, it received "an insufficient number of votes" to approve the higher increase and because of "feedback we received regarding the 2007 Plan Proposal."

7.     As such, the 2016 Proxy and Proxy Supplement were materially false and misleading. The proxy solicitations prevented NovaBay's stockholders from making informed decisions about whether to approve the Plan Amendment. On the basis of these false and misleading disclosures, NovaBay stockholders voted to approve the Plan Amendment.

8.     Following the stockholder approval of the Plan Amendment, the Board used the new shares almost immediately to grant equity awards to Company insiders, issuing 675,000 stock options to Sieczkarek, 160,000 stock options to Thomas J. Paulson ("Paulson"), the Company's chief financial officer, corporate secretary, and treasurer, and 130,000 stock options

to Justin M. Hall ("Hall"), the Company's senior vice president and general counsel. These awards were issued using the shares added to the Plan based on the false and misleading 2016 Proxy and Proxy Supplement.

9.      Because of the above misconduct, the Company and its stockholders have been harmed.

10.     Accordingly, Plaintiff brings this action seeking a cancellation of the Plan Amendment that was adopted at the 2016 Annual Meeting and Reconvened Meeting on the basis of the materially false and misleading representations made by the Board, and a rescission of the equity awards wrongfully granted pursuant to the defective Plan Amendment.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. Plaintiff is a citizen of Washington and no defendant is a citizen of Washington.

12.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. Venue is proper in this district because Defendant NovaBay is incorporated in this District and because a substantial portion of the wrongs complained of herein occurred in this District.

## THE PARTIES

13.     Plaintiff owned NovaBay stock at the time of the acts of wrongdoing alleged herein and otherwise at all relevant times. Plaintiff is a citizen of Washington.

14.     Nominal defendant NovaBay is a Delaware corporation with its principal place of business at 5980 Horton Street, Suite 550, Emeryville, California 94608. NovaBay is a

biopharmaceutical company that develops products for the eye care market. NovaBay's common stock trades on the NYSE MKT exchange. NovaBay is a citizen of California and Delaware.

15.     Defendant Sieczkarek is the Company's president and chief executive officer and has served as a director of the Company since January 2014. Sieczkarek has been chairman of the Board since April 2015. Sieczkarek is a citizen of California.

16.     Defendant Paul E. Freiman ("Freiman") has been a director of the Company since May 2002. Defendant Freiman is the chairman of the Board's compensation committee (the "Compensation Committee"). Freiman is a citizen of California.

17.     Defendant Gail Maderis ("Maderis") has been a director of the Company since October 2010. Defendant Maderis is a member of the Compensation Committee. Maderis is a citizen of California.

18.     Defendant Xinzhou (Paul) Li ("Li") has been a director of the Company since April 2015. Li is a citizen of China.

19.     Defendant Xiaoyan (Henry) Liu ("Liu") has been a director of the Company since January 2016. Liu is a Board designee of China Kington Asset Management Co. Ltd. ("China Kington"). Liu is a citizen of Australia.

20.     Defendant Mijia (Bob) Wu ("Wu") has been a director of the Company since January 2016. Wu is a citizen of California.

21.     Defendant Todd Zavodnick ("Zavodnick") has been a director of the Company since May 6, 2016. Zavodnick is a citizen of Texas.

22.     Defendant T. Alex McPherson ("McPherson") was a director of the Company from July 2006 until August 2016. Defendant McPherson was a member of the Compensation Committee during the period relevant to this complaint. McPherson is a citizen of Canada.

23.     Defendant Massimo Radaelli ("Radaelli") was a director of the Company from January 2014 until May 6, 2016. Radaelli is a citizen of Italy.

24.     Defendant Paulson has served as NovaBay's chief financial officer, corporate secretary, and treasurer since January 2008. He is a citizen of California.

25.     Defendant Hall has served as NovaBay's senior vice president and general counsel since December 2015. He is a citizen of California.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *Background of the Plan*

26.     The Plan was originally adopted by the Board in March 2007 and approved by the Company's stockholders in April 2007, both prior to the Company's initial public offering ("IPO"), and became effective in October 2007 when the Company held its IPO. The Plan has been amended multiple times by the Board and the stockholders over the years.

27.     The Plan authorizes the granting of various equity awards, including stock options, stock appreciation rights, restricted stock, restricted stock units, stock units, and stock awards. The Company's employees, officers, directors, and consultants may be granted equity awards under the Plan.

28.     The Plan designates the Compensation Committee as administrator of the Plan. However, pursuant to §3(b) of the Plan, "the Board may, at any time and from time to time, without any further action of the Committee, exercise the powers and duties of the Committee under the Plan[.]" As disclosed in the 2016 Proxy, "[d]ecisions regarding executive compensation are ultimately determined by the Board upon recommendations of the Compensation Committee[.]"

29.     In addition, §4(c) of the Plan provides that "[i]n the event that the Committee shall determine that any . . . reverse stock split . . . affects the [Company] Shares such that an adjustment is determined by the Committee to be appropriate . . . then the Committee shall, in such manner as it may deem equitable, adjust any or all of (i) the number and type of Shares (or other securities or other property) that thereafter may be made the subject of Awards, (ii) the number and type of Shares (or other securities or other property) subject to outstanding Awards, (iii) the purchase price or exercise price with respect to any Awards and (iv) the limitations contained in Section 4(d) of the Plan[.]"

30.     At the time of the Plan's initial, pre-IPO approval, §4(a) of the Plan reserved an aggregate of four million shares of NovaBay stock for issuance as awards under the Plan (the "Aggregate Share Limit"). In addition, §4(d) of the Plan provided that "[n]o Eligible Person may be granted any Award or Awards under the Plan which is intended to represent 'qualified performance based compensation' with the meaning of Section 162(m) of the Code, for more than 2,000,000 Shares (subject to adjustment as provided for in Section 4(c) of the Plan), in the aggregate in any taxable year" (the "Individual Share Limit").

31.     In August 2007, NovaBay effected a 1-for-2 reverse stock split. Accordingly, the Plan's Aggregate Share Limit and Individual Share Limit were reduced by half. As disclosed in the Company's Schedule 14A proxy statement filed with the SEC on April 23, 2008, the Plan's Aggregate Share Limit was two million shares and Individual Shares Limit was one million shares in a taxable year.

**The Plan's Evergreen Provision**

32.     In 2008, the Board adopted and the Company's stockholders approved an amendment to the Plan that inserted an "Evergreen Provision" into §4(a) of the Plan.

33.     Pursuant to the Evergreen Provision, the number of shares authorized for issuance under the Plan would be increased "on the first day of each of the Company's fiscal years beginning on January 1, 2009 and ending on January 1, 2017 equal to (i) the lesser of (A) 1,000,000 shares of Common Stock or (B) four percent (4%) of the number of shares of Common Stock outstanding on the last day of the immediately preceding fiscal year or (ii) such lesser number of shares of Common Stock than provided for in Section 4(a)(i) as determined by the Board." In other words, on January 1 of each year, the Company increased the Plan's Aggregate Share Limit.

34.     In 2012, the Board adopted and the Company's stockholders approved an amendment to the Plan that eliminated "the lesser of (A) 1,000,000 shares of Common Stock" from the Evergreen Provision.

35.     As disclosed in Forms S-8 filed by the Company each year, the Board has used the Evergreen Provision to increase the number of authorized shares under the Plan. Specifically, the Board increased the Aggregate Share Limit each year between 2009 and 2015 as follows:

| Year | Increase | Aggregate Share Limit Following Increase |
|------|----------|------------------------------------------|
| 2009 | 858,766 | 2,858,766 |
| 2010 | 930,177 | 3,788,943 |
| 2011 | 935,665 | 4,724,608 |
| 2012 | 1,000,000 | 5,724,608 |
| 2013 | 1,478,924 | 7,203,532 |
| 2014 | 1,816,138 | 9,019,670 |
| 2015 | 2,066,000 | 11,085,670 |

36.     Accordingly, as of January 1, 2015, the Plan's Aggregate Share Limit was 11,085,670 shares.

***The Reverse Stock Split***

37.     On November 20, 2015, the Company filed a Schedule 14A proxy statement with the SEC (the "2015 Proxy"). The 2015 Proxy was disseminated in connection with a special meeting of stockholders that was held on December 11, 2015, at which the Board sought stockholder approval of a reverse stock split within a range of 1-for-15 to 1-for-25 at the Board's discretion.

38.     The 2015 Proxy assured NovaBay stockholders that "[p]roportional adjustments (*i.e.*, in proportion to the reverse stock split ratio) will be made to the maximum number of shares issuable under, and other terms of our . . . 2007 Omnibus Incentive Plan . . . , including adjustments (based upon the reverse stock split ratio) by the Board or a committee thereof, as applicable, to the number of shares available for future grant under the Plan[.]"

39.     On December 11, 2015, the Company's stockholders voted to approve the reverse stock split.

40.     As disclosed in a Form 8-K filed by the Company with the SEC on December 21, 2015, on December 18, 2015, the Company effected the Reverse Split at a ratio of 1-for-25. The Reverse Split "reduc[ed] the number of shares of common stock outstanding from approximately 87,138,547 shares to approximately 3,485,541 shares (prior to rounding)."

41.     The Form 8-K further disclosed that "[p]roportional adjustments will be made to the exercise prices of the Company's outstanding warrants and stock options, and to the number of shares issued and issuable under the Company's stock incentive plans."

42.     Accordingly, the Plan's Aggregate Share Limit was reduced proportionately from 11,085,670 shares to 443,427 shares authorized for issuance under the Plan. In addition, in accordance with the disclosure in the 2015 Proxy, the Individual Share Limit was proportionately reduced from one million shares to 40,000 shares.

43.     According to the Form 10-K filed by the Company with the SEC on March 4, 2016, the Company had a total of 3.486 million shares outstanding as of December 31, 2015 and 34,233 shares remaining for issuance under the Plan. As further disclosed in the Form 10-K, in January 2016, NovaBay added 139,449 shares to the Plan in accordance with the Evergreen Provision, increasing the number of shares available for issuance under the Plan from 34,233 shares to 173,682 shares. By adding 139,449 shares to the Plan, the Plan's Aggregate Share Limit was increased to 582,876 shares.

### The Board Seeks to Further Increase the Plan's Aggregate Share Limit

44.     Despite the yearly increases of the Plan's Aggregate Share Limit pursuant to the Evergreen Provision, the Board sought to further increase the number of shares available for grant under the Plan in 2016.

45.     On April 18, 2016, NovaBay filed the 2016 Proxy with the SEC in connection with the 2016 Annual Meeting, which was scheduled for May 3, 2016. As disclosed in the 2016 Proxy, on April 7, 2016, the Company had 5,074,806 outstanding shares and 26,039 shares remaining for issuance under the Plan.

46.     In the 2016 Proxy, the Board sought stockholder approval of an amendment to the Plan that would purportedly increase the number of shares reserved for issuance by an additional 2,500,000 shares (it actually would have increased the Aggregate Share Limit by 3,917,124 shares). The Board sought approval of this amendment in proposal three of the 2016 Proxy, titled "Approval of Amendment to the 2007 Plan."

47.     As disclosed in the 2016 Proxy, the Board "believes" that the increase in the Aggregate Share Limit "is necessary . . . in order to attract and retain qualified non-employee directors and senior management personnel."

48.     However, rather than disclose to stockholders that the Aggregate Share Limit was

582,876 shares following the 1-for-25 reverse stock split, the 2016 Proxy affirmatively and

unequivocally misrepresented that the Aggregate Share Limit was at least two million shares,

alternatively stating that the limit was either two million shares or two million shares plus the

shares added pursuant to the Evergreen Provision.

49.     Specifically, the 2016 Proxy stated:

> Section 4(a) of the 2007 Plan shall be amended to increase the shares available for
> issuance under the 2007 Plan by two million, five hundred thousand (2,500,000)
> shares *from two million (2,000,000) plus an automatic annual increase* on the
> first day of each of the Company's fiscal years beginning on January 1, 2009 and
> ending on January 1, 2017, equal to four percent (4%) of the number of shares of
> Common Stock outstanding on the last day of the immediately preceding fiscal
> year or such lesser number as determined by the Board"

(emphasis added).

50.     The 2016 Proxy further stated:

> *Shares Available For Awards.* **As of April 7, 2016, an aggregate of two million
> (2,000,000) shares of our common stock have been reserved for issuance over
> the term of the 2007 Plan.** As described above, without the amendment being
> proposed in this Proposal Three, every year the number of shares reserved for
> issuance under the 2007 Plan increases by an amount equal to the lesser of (a)
> four percent (4%) of the total number of shares of our common stock outstanding
> on the last day of the preceding year, or (b) such lesser number as determined by
> our Board.

(emphasis added).

51.     The 2016 Proxy also attached a proposed plan incorporating the proposed

amendment as Exhibit A. Section 4(a) of the attached version of the plan, provided:

> <u>Shares Available</u>. Subject to adjustment as provided in Section 4(c) of the Plan,
> *the aggregate number of Shares that may be issued under the Plan shall be
> 4,500,000*, plus an automatic annual increase on the first day of each of the
> Company's fiscal years beginning on January 1, 2009 and ending on January 1,
> 2017[.]

(emphasis added) (underlining in original).

52.     By affirmatively and unequivocally misrepresenting the Plan's Aggregate Share Limit, the Board misled stockholders to believe that the increase in the limit would be significantly less than it actually was and that consequently, the Board's ability to give stock to Company insiders and dilute the public stockholders was more limited than it actually was. While the Board represented in the 2016 Proxy that the amendment would have increased the Aggregate Share Limit by only 2,500,000 shares, in truth, the amendment would have increased the limit by 3,917,124 shares.

53.     As disclosed at the end of proposal three: "For the reasons described in this Proxy Statement, our Board recommends unanimously that you vote "FOR" the approval of the 2007 Plan, as proposed to be amended" (emphasis omitted).

54.     In the 2016 Proxy, the Board also sought stockholder approval, on an advisory basis, of the compensation paid to NovaBay's executive officers in 2015. Such a vote is commonly known as a "say-on-pay" vote.

55.     On May 9, 2016, NovaBay held the 2016 Annual Meeting. The stockholders resoundingly rejected the Company's executive compensation structure, with 2,261,287 votes for "No" and only 451,002 votes for "Yes" in the "say-on-pay" vote.

56.     With respect to the stockholder vote on the Plan Amendment, however, the Company disclosed in a Form 8-K filed with the SEC on May 9, 2016, that "[a]t the time of the 2016 Annual Meeting, there were an insufficient number of votes needed to approve the 2007 Plan Proposal." The Form 8-K further stated that, "[g]iven the important nature of the 2007 Plan Proposal, the Company decided to adjourn the 2016 Annual Meeting to allow additional time for stockholders to consider this proposal, and for the Company to solicit additional proxies on the matter."

57.     On May 17, 2016, NovaBay filed the Proxy Supplement in connection with the Reconvened Meeting that was scheduled for May 26, 2016. The only issue addressed in the Proxy Supplement was the Plan Amendment, with the Board seeking stockholder approval of an amendment to the Plan that would purportedly increase the number of shares reserved for issuance by an additional 1,124,836 shares, rather than the purportedly 2,500,000 shares previously sought. Accordingly, the Board explained that the Plan's Aggregate Share Limit would be 3,124,836 if the Plan Amendment was approved.

58.     The Proxy Supplement incorporated the 2016 Proxy except to the extent that information in the Proxy Supplement modified or superseded information contained in the 2016 Proxy.

59.     In the Proxy Supplement, the Board explained that it had reduced the proposed increase to the Aggregate Share Limit in response to stockholder feedback. Specifically, the Board stated: "In response to feedback we received regarding the 2007 Plan Proposal, on May 16, 2016, the Board of Directors of the Company (the "Board") further amended Section 4(a) of the Plan to reduce the proposed increase in the number of shares issuable under the Plan."

60.     Like the misleading disclosures in the 2016 Proxy, the Proxy Supplement affirmatively and unequivocally misrepresented the Plan's Aggregate Share Limit, misrepresenting that the limit was two million shares. Specifically, the Proxy Supplement stated:

> Under the 2007 Plan Proposal, as amended, ***the number of shares available under the Plan will be increased by one million, one hundred twenty-four thousand, eight hundred thirty-six (1,124,836) shares*** of Company common stock, rather than two million, five hundred thousand (2,500,000) shares. Accordingly, ***the Company has reserved an aggregate three million, one hundred twenty-four thousand, eight hundred thirty-six (3,124,836) shares of Company common stock for issuance pursuant to the Plan***.

(emphasis added).

61.     As disclosed at the end of the Proxy Supplement:

Proposals — The Board of Directors recommends a vote FOR the below proposal.

> 3. To approve an amendment to the 2007 Omnibus Incentive Plan *to increase the number of shares of NovaBay common stock reserved for issuance thereunder from two million (2,000,000)* to three million, one hundred twenty-four thousand, eight hundred thirty-six (3,124,836).

(italics and bolding added) (bolding omitted).

62.     The Proxy Supplement also attached a proposed plan incorporating the Plan Amendment as Exhibit A. Section 4(a) of the attached version of the plan, provided:

> <u>Shares Available</u>. Subject to adjustment as provided in Section 4(c) of the Plan, *the aggregate number of Shares that may be issued under the Plan shall be 3,124,836*, plus an automatic annual increase on the first day of each of the Company's fiscal years beginning on January 1, 2009 and ending on January 1, 2017

(emphasis added) (underlining in original).

63.     On May 26, 2016, on the basis of the false and misleading 2016 Proxy and Proxy Supplement, the stockholders voted to approve the Plan Amendment.

64.     By unconditionally misrepresenting to stockholders that the Plan's Aggregate Share Limit was significantly higher than it actually was, the Board affirmatively misled stockholders to believe that the Board was increasing the aggregate limit by a smaller amount than it actually did.

65.     Following the Reverse Stock Split, the Plan's Aggregate Share Limit was 582,876 shares.

66.     According to the Proxy Supplement and amended version of the Plan attached to the Proxy Supplement, following the Plan Amendment, the Plan would authorize a total of 3,124,836 shares for grant thereunder, meaning that the Plan Amendment would have increased the Aggregate Share Limit by 2,541,960 shares.

14

67.     However, in the 2016 Proxy and Proxy Supplement, the Board misrepresented to stockholders that the Aggregate Share Limit was at least two million shares and that it was seeking to increase the limit by only 1,124,836 shares to 3,124,836 shares.

68.     As such, the Board portrayed the amendment as increasing the Plan's Aggregate Share Limit by 1,124,836 shares, or 56%, from 2,000,000 shares to 3,124,836 shares when in fact the proposed amendment increased the aggregate limit by 2,541,960 shares, or 336%, from 582,876 shares to 3,124,836 shares. In fact, the Plan Amendment's actual increase of 2,541,960 shares was 225% greater than the Board's claimed increase of only 1,124,836 shares.

***The Unlawfully Amended Plan is Being Used to Grant Awards***

69.     The Board made quick use of the increased Aggregate Share Limit.

70.     On May 27, 2016, NovaBay filed a Form 8-K with the SEC, in which it announced that the Board had entered into an employment agreement with Sieczkarek pursuant to which he would be granted 675,000 stock options under the Plan.

71.     On June 6, 2016, the Board issued Sieczkarek 675,000 stock options under the Plan.

72.     On that same day, the Board issued Paulson 160,000 stock options under the Plan, and Hall 130,000 stock options under the Plan.

73.     The awards to each of Sieczkarek, Paulson, and Hall were issued under the Plan using shares that were added to the Plan via the stockholders' approval of the Plan Amendment.

***The Plan Amendment and the resulting unauthorized awards issued pursuant to it, should be rescinded***

74.     Stockholders of Delaware corporations have the right to cast fully informed votes based on truthful proxy solicitations from their fiduciaries. The Plan's actual Aggregate Share

Limit was information that a reasonable NovaBay stockholder would have found important in determining whether to approve the Plan Amendment to increase the aggregate limit.

75.     As demonstrated above, the Board affirmatively and unequivocally misrepresented that the Plan's Aggregate Share Limit was at least two million shares and that the Plan Amendment sought to increase the limit by 1,124,836 shares, when in fact the Plan's Aggregate Share Limit was only 582,876 shares and the Plan Amendment would actually increase the limit by 2,541,960 shares. Accordingly, the Plan Amendment increased the Plan's Aggregate Share Limit by 1,417,124 shares more than what the Board represented.

76.     As shares are issued under the Plan, NovaBay public stockholders suffer, and will continue to suffer, a dilution of their stake in the Company. Aggregate share limits serve to protect stockholders by limiting a board's ability to dilute the public stockholders by issuing company insiders excessive equity awards under a compensation plan. In addition, they allow stockholders to know ahead of time the maximum amount of dilution they might incur because of awards issued under a compensation plan.

77.     In weighing the benefits of the Plan Amendment against the negative effects of dilution, a reasonable NovaBay stockholder certainly would have found it important to know the Plan's true Aggregate Share Limit and the true amount by which the Plan Amendment was intended to increase the Aggregate Share Limit. An aggregate share limit is the primary limitation on the Board's ability to use the Plan to dilute the public stockholders.

78.     A reasonable and fully informed NovaBay stockholder may well have elected to vote against the Plan Amendment if he or she were correctly informed that the Plan Amendment, rather than increasing the Aggregate Share Limit by 1,124,836 shares, actually increased the limit by 2,541,960 shares.

79.     The difference between the misrepresented increase of 1,124,836 shares and the actual increase of 2,541,960 shares – a 1,417,124-share difference – represents a massive percentage of NovaBay's outstanding stock, and the stockholders would incur significant dilution if the Board were to issue shares using the new 2,541,960 shares purportedly available under the Plan. As disclosed in the 2016 Proxy, the Company had 5,074,806 outstanding shares as of April 7, 2016, which means that the 1,417,124-share difference, by itself, represented approximately 27.9% of the Company's outstanding common stock.

80.     Further, the true 2,541,960-share increase to the Aggregate Share Limit represented 50% of the Company's then-existing outstanding equity, a shocking level for a compensation plan's aggregate share limit. By mispresenting the true amount of the increase to the Aggregate Share Limit, the Board hid the fact that it was seeking the ability to give away 50% of the Company's then-outstanding equity as stock awards to insiders under the Plan.

81.     That a reasonable and fully informed NovaBay stockholder would have found it important to know the Plan's true Aggregate Share Limit and the true increase to that limit is confirmed by the fact that the Board was already forced to reduce its initial attempt to increase the Aggregate Share Limit due to the stockholders' response. As the Board explained in the Proxy Supplement, it was forced to reduce its proposed amendment to increase the Aggregate Share Limit from increasing the limit by a purported 2,500,000 shares to a purported 1,124,836 shares because of stockholder feedback and the fact that it received an insufficient number of votes to approve the higher increase.

82.     Further confirming that a reasonable and fully informed NovaBay stockholder would want to know the true Aggregate Share Limit is the fact that the stockholders have already expressed concern with the Company's executive compensation structure, overwhelmingly

voting "No" in the Company's "say-on-pay" vote. Thus far, the Board has used the shares that were added pursuant to the Plan Amendment to give equity awards to the CEO and other executives.

83.     Indeed, in recognition of the importance of the aggregate limit on equity-compensation plans, the NYSE MKT Company Guide required stockholder approval of the Plan Amendment. Section 711 states that "[a]pproval of shareholders is required . . . with respect to the establishment of (or material amendment to) a stock option or purchase plan . . . pursuant to which options or stock may be acquired by officers, directors, employees, or consultants[.]" Section 711.01 provides that "a material amendment would include . . . any material increase in the number of shares to be issued under the plan (other than to reflect a reorganization, stock split, merger, spinoff or similar transaction)[.]" Accordingly, the NYSE MKT, the exchange on which the Company's stock trades, has acknowledged the importance to stockholders of the dilutive effect of equity-compensation plans and therefore requires stockholder approval.

84.     Had the Company's stockholders been told the truth about the terms of the Plan and the effects of the Plan Amendment, they may not have voted in favor of the Plan Amendment.

85.     Accordingly, the 2016 Proxy and Proxy Supplement were materially false and misleading.

86.     Based on the false and misleading 2016 Proxies, the Company's stockholders voted to approve the Plan Amendment.

87.     The vote of the stockholders to approve the Plan Amendment should be deemed ineffective, and the Plan Amendment should be rescinded. Moreover, it is apparent that the Board issued the 2016 equity awards to Sieczkarek, Paulson, and Hall under the Plan using

shares that were added pursuant to the Plan Amendment, as the 2016 Proxy represented that, as of April 7, 2016, only 26,039 shares remained available for future grants under the Plan. Because the granted shares were not properly authorized by stockholders pursuant to valid votes, the grants are invalid and must be surrendered.

88.     Further, each of Sieczkarek, Freiman¸ Maderis, McPherson, Radaelli, Wu, Li, Liu, and Zavodnick as a Board member, knew and/or was on notice of that the Plan's Aggregate Share Limit was 582,876 shares and nevertheless caused the Company to issue 2016 Proxy and Proxy Supplement that falsely misrepresented that the Limit was two million shares. In addition to the fact that each of these Defendants approved either the false and misleading 2016 Proxy or Proxy Supplement, the following additional facts support the conclusion that these Defendants were aware that the Plan's Aggregate Share Limit was 582,876 shares:

    a.  Defendants Freiman, McPherson, and McPherson were members of the Compensation Committee responsible for administering and overseeing the Plan, and thus certainly knew its terms.

    b.  Defendants Sieczkarek, Freiman, Maderis, Li, McPherson, and Radaelli were members of the Board that issued the 2015 Proxy, seeking stockholder approval of a reverse stock split and informing stockholders that the Aggregate Share Limit would be proportionally adjusted to account for any reverse stock split. They were also members of the Board that approved the 1-for-25 reverse stock split on December 11, 2015 and filed a Form 8-K with the SEC on December 21, 2015, disclosing to stockholders that "[p]roportional adjustments will be made to . . . the number of shares issued and issuable under the Company's stock incentive plans."

    c.  Defendants Sieczkarek, Freiman, Maderis, Li, Liu, Wu, McPherson, and Radaelli were members of the Board that filed a Form 10-K with the SEC on March 4, 2016, that disclosed the number of shares that had been to the Plan pursuant to its Evergreen Provision each year between 2010 and 2016 and adjusted the number of shares added to account for the 1 for 25 reverse stock split.

    d.  Prior to his appointment as chief executive officer, Defendant Sieczkarek was the chairman of the Compensation Committee responsible for administering and overseeing the Plan and thus certainly knew its terms.

***The Board also appears to have violated the Plan's Individual Share Limit.***

89.     In addition to having violated the Aggregate Share Limit, the Board also appears to have violated the Individual Share Limit in connection with the 675,000, 160,000, 130,000 stock options issued to Sieczkarek, Paulson and Hall, respectively, on June 6, 2016.

90.     As demonstrated above, following the 1-for-25 reverse stock split, the Board proportionally reduced the Individual Share Limit from 1 million shares per year to 40,000 shares per year.

91.     The Individual Share Limit applies to awards "intended to represent 'qualified performance based compensation' with the meaning of Section 162(m) of the Code[.]"

92.     The stock options issued to Sieczkarek, Paulson, and Hall appear to have been intended to represent "qualified performance based compensation."

93.     As disclosed in the 2016 Proxy, the stock options issued by the Company to executives are "likely" intended to qualify as performance-based compensation exemption under Section 162(m) of the Internal Revenue Code. In fact, one of the Board's reasons for the Plan Amendment was to enable it to issue performance-based compensation under Section 162(m).

94.     As stated in the 2016 Proxy:

The stock options granted by the Company ***are likely intended to qualify for the performance-based compensation*** exemption under Section 162(m), thus controlled by the Limit. Indeed, the 2016 Proxy states that the Plan amendment is "necessary to permit [NovaBay] to grant incentive stock options to employees under Section 422 of the Internal Revenue Code, as amended (the 'Code'), and to ensure that compensation paid under the 2007 Plan is eligible for an exemption from the limits on tax deductibility imposed by Section 162(m) of the Code[.]"

(emphasis added).

95.     The 2016 Proxy further states that "[t]he 2007 Plan has been designed to permit grants of stock options and SARs issued under the 2007 Plan to qualify under the performance-

based compensation rules so that income attributable to the exercise of a non-qualified stock option or a SAR may be exempt from the $1,000,000 deduction limit."

96.     In addition, the stock options issued to Sieczkarek, Paulson, and Hall are performance based.

97.     As disclosed in the Form 4 filed on behalf of Sieczkarek with the SEC on June 8, 2016, in connection with his stock options: one-third of the shares underlying the options vest on January 31, 2017, "in direct proportion to the percentage achievement of the stated 2016 corporate goals," with the remaining two-thirds of the shares vesting in equal parts on January 31, 2018 and 2019, "subject to the successful completion of certain performance criteria."

98.     Similarly, as disclosed in the Forms 4 filed with the SEC on June 8, 2016, Paulson and Hall's stock options "vest on January 31, 2017, in direct proportion to the percentage achievement of the stated 2016 corporate goals[.]"

99.     Accordingly, it appears that, just as the Board violated the Plan's Aggregate Share Limit, it also violated the Individual Share Limit, issuing 635,000, 120,000, and 90,000 stock options to Sieczkarek, Paulson, and Hall, respectively, in excess of the limit. To the extent that these shares were issued as qualified performance-based compensation, they were issued in violation of the Plan and should be rescinded.

## DEMAND FUTILITY ALLEGATIONS

100.     Plaintiff brings this action derivatively on behalf of NovaBay to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of the Individual Defendants' misconduct. Plaintiff is a stockholder of NovaBay and will adequately represent the interests of the Company in this litigation.

101.    At the time of this filing, the Board consists of the following eight directors: Sieczkarek, Freiman, Maderis, Li, Liu, Wu, Zavodnick, non-Defendant Yonghao (Carl) Ma ("Ma") (the "Current Board"). Each member of the Current Board, aside from Ma, has been named as a Defendant in this Action.

102.    Plaintiff did not make a demand on the Current Board prior to instituting this action. A pre-suit demand upon the Current Board is a useless and futile action, and therefore excused.

103.    Each Current Board member (other than Ma and Zavodnick) was on the Board that adopted the Plan Amendment and knowingly and intentionally sought and recommended stockholder approval of that amendment through the issuance of false and misleading 2016 Proxy. Further, each Current Board member (other than Ma) was on the Board that adopted the reduction to the Plan Amendment and knowingly and intentionally sought and recommended stockholder approval of the reduced Plan Amendment through the issuance of false and misleading Proxy Supplement. The Board's actions in adopting an amendment to the Plan, and then recommending that stockholders approve the amendment through the issuance of false and misleading proxy statements, could not have been a good faith exercise of business judgment. Accordingly, because a majority of the Current Board adopted and recommended approval of the Plan Amendment, demand is excused.

104.    In addition, each Current Board member (other than Ma) was on the Board that approved the June 6, 2016 awards to Sieczkarek, Paulson, and Hall in excess of the Plan's Aggregate Share Limit. The Board's actions, in granting an award in violation of the express, unambiguous terms of the Plan could not have been a good faith exercise of business judgment. Furthermore, each member of the Current Board (other than Ma) faces a substantial likelihood of

liability for their decision to grant an award in violation of the Plan. Accordingly, demand as to the Current Board is excused.

105.    Sieczkarek is not independent or disinterested. As Sieczkarek received stock options being challenged in this lawsuit, he has a strong financial incentive not to authorize any corrective action that would force him to disgorge the improperly granted stock options. In addition, Sieczkarek is incapable of considering a demand in this action because he is not independent, as he is an employee of the Company and his principal source of income is based on his role with the Company.

## CLASS ACTION ALLEGATIONS

106.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on his own behalf and as a class action on behalf of those who held NovaBay stock as of the close of business on April 7, 2016, which was the record date for stockholders entitled to vote at the 2016 Annual Meeting and Reconvened Meeting (the "Class"). Defendants are excluded from the Class, as are Defendants' affiliates, immediate families, legal representatives, heirs, successors, or assigns and any entity in which Defendants have or had a controlling interest.

107.    This action is properly maintainable as a class action.

108.    The Class is so numerous that joinder of all members is impracticable. The Company had 5,074,806 shares outstanding as of April 7, 2016. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, upon information and belief, there are thousands of members in the Class.

109.    Questions of law and fact are common to the Class, including, *inter alia*, the following:

a.  whether the 2016 Proxy and Proxy Supplement contained materially false and misleading statements, or omitted information necessary to render them not misleading; and

b.  whether Plaintiff and the other members of the Class have been or will be harmed by the wrongs complained of herein.

110.  Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of other members of the Class and Plaintiff has the same interests as the other members of the Class. All NovaBay stockholders were forced to cast an uninformed vote as a result of the materially false and misleading 2016 Proxy and Proxy Supplement. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

111.  The prosecution of separate actions by individuals members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair their ability to protect their interests.

112.  Defendants have acted, and refused to act, on grounds that apply generally to the Class, and are causing injury to the Class, such that final injunctive or declaratory relief is appropriate on behalf of the Class as a whole.

113.   The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

## COUNT I
### Breach of Fiduciary Duty
### (Derivative Claim against all Defendants except Paulson and Hall)

114.   Plaintiff repeats each and every allegation contained above as if fully set forth herein.

115.   As officers and/or directors of the Company, each Defendant owed the Company and its stockholders the fiduciary obligations of loyalty, good faith, and due care.

116.   The 2016 Proxy and Proxy Supplement contained materially false and misleading statements concerning the Plan's Aggregate Share Limit.

117.   In authorizing, approving, and/or abdicating their duty by disseminating the materially misleading 2016 Proxy and Proxy Supplement, Defendants breached their duty of candor under Delaware law.

118.   As explained above, the material misrepresentations in the 2016 Proxy and Proxy Supplement misled stockholders about a material aspect of the Plan and proximately resulted in stockholders voting to approve the Plan Amendments, which in turn led to the Board's improper grant of NovaBay shares in excess of the Plan's Aggregate Share Limit, including the June 6, 2016 awards to Sieczkarek, Paulson, and Hall.

119.   In authorizing, approving, and/or abdicating their duty by permitting the granting of stock options by utilizing the unlawfully amended Plan, and in fact granting shares not authorized by the Company's stockholders, Defendants exceeded their authority under the Plan

and did not act in good faith toward the Company, and thus breached their fiduciary duties under Delaware law.

120.    As a result of the Defendants' actions, the Company has been and will be damaged.

121.    Plaintiff and the Company have no adequate remedy at law.

**COUNT II**
**Breach of Fiduciary Duty**
**(Class claim brought directly against all Defendants except Paulson and Hall)**

122.    Plaintiff repeats each and every allegation contained above, as though fully set forth herein.

123.    The Board breached its fiduciary duty by causing the Company to issue the materially false and misleading 2016 Proxy and Proxy Supplement.

124.    As a result, the vote of the stockholders to approve the Plan Amendment at the Reconvened Meeting was not fully informed and is invalid. The Plan Amendment approved at the Reconvened Meeting, therefore, should be rescinded.

125.    As a result, Plaintiff and the Class are being, and will continue to be, harmed.

126.    Plaintiff and the Class have no adequate remedy at law.

**COUNT III**
**Unjust Enrichment**
**(Derivative claim against Sieczkarek, Paulson, and Hall)**

127.    Plaintiff repeats each and every allegation set forth above as if fully set forth herein.

128.    Sieczkarek, Paulson, and Hall received unauthorized personal financial benefits as a result of the award of stock options challenged herein.

129.    It would be unconscionable and against fundamental principles of justice, equity, and good conscience for Sieczkarek, Paulson, and Hall to retain the benefits of the awards that were unauthorized under the Plan.

130.    Sieczkarek, Paulson, and Hall have been unjustly enriched at the expense and to the detriment of the Company.

131.    Accordingly, this Court should order Sieczkarek, Paulson, and Hall to disgorge the stock options the Board issued them on June 6, 2016.

132.    Plaintiff and the Company have no adequate remedy at law.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.    A declaration that the 2016 Proxy and Proxy Supplement were materially false and misleading;

C.    Rescinding the Plan Amendment approved at the 2016 Annual Meeting and Reconvened Meeting;

D.    An order declaring any awards made using shares added to the Plan by the Plan Amendment, including the June 6, 2016 stock option awards to Sieczkarek, Paulson, and Hall, are invalid and subject to disgorgement;

E.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' wrongdoing, plus pre-judgment and post-judgment interest;

F.     Equitable and/or injunctive relief as necessary or permitted by law and equity, including disgorgement, attachment, impoundment, and/or imposition of a constructive trust on or otherwise restricting the disposition/exercise of the challenged grants discussed herein;

G.     Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

H.     Granting Plaintiff such other and further relief as the Court may deem just and proper.

Dated: December 19, 2016                     Respectfully submitted,

                                             FARNAN LLP

OF COUNSEL:                                  /s/ Brian E. Farnan
                                             Brian E. Farnan (Bar No. 4089)
LEVI & KORSINSKY LLP                         Michael J. Farnan (Bar No. 5165)
Joseph Levi                                  919 N. Market St., 12th Floor
William J. Fields                            Wilmington, DE 19801
Michael B. Ershowsky                         (302) 777-0300
30 Broad Street, 24th Floor                  bfarnan@farnanlaw.com
New York, New York 10004                     mfarnan@farnanlaw.com
(212) 363-7500
(212) 363-7171                               *Attorneys for Plaintiff*